BENTALL v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. October 28, 1918.)

No. 5117.

WITNESSES ☞396(3)—EXAMINATION—SURREBUTTAL.

Where defendant on cross-examination was asked if he had an identified conversation, and he not only denied having said the things to which his attention was directed, but gave his understanding of the conversation, and the government in rebuttal placed a witness on the stand who contradicted him, defendant on surrebuttal is not entitled to again give his version.

In Error to the District Court of the United States for the District of Minnesota; Wilbur F. Booth, Judge.

Jacob O. Bentall was convicted of aiding, abetting, counseling, commanding, and inducing another to refuse to register for military service, pursuant to Act May 18, 1917, c. 15, § 5, 40 Stat. 80, and he brings error. Affirmed.

T. E. Latimer, of Minneapolis, Minn., for plaintiff in error.

Alfred Jaques, U. S. Atty., of Duluth, Minn., for defendant in error.

Before HOOK and STONE, Circuit Judges, and MUNGER, District Judge.

STONE, Circuit Judge. Writ of error from a conviction for aiding, abetting, counseling, commanding, and inducing one John F. Kas-

sube to willfully fail and refuse to register for military service pursuant to section 5 of the act of May 18, 1917, entitled "An act to authorize the President to increase temporarily the military establishment of the United States."

Three errors are assigned. Two of these are the same in substance, and attack the sufficiency of the evidence to justify the verdict of guilty. The evidence has been carefully examined, and we have no doubt of its sufficiency to sustain the verdict.

The other error relates to the refusal of the court to permit defendant to answer a certain question asked of him on surrebuttal. While he was on the stand in his own defense he was cross-examined as follows:

"Q. Didn't the sheriff ask you if you had a man working for you that had not registered? A. He did.

"Q. Then you had that talk about the boy? A. John was not there at the time.

"Q. And did you say to the sheriff you didn't have a man working there who had not registered, and that there had been nobody working on your place that failed to register? A. I did not say that.

"Q. You did not say that? A. No, sir; I told him I had a boy; his father and this boy. The father was working there; the two of them came about the 3rd of July. They were working at my place at that time.

"Q. I am asking you whether you didn't say to the sheriff of Meeker county that there hadn't been anybody working on your place, farm, that summer, that failed to register? A. No, sir; I did not.

"Q. Then, if he claimed that you did say that to him, he is— A. He is mistaken, absolutely.

"Q. Then the sheriff asked you how it was that the rumor started that there was a man out there that was not registered? A. No, sir.

"Q. Do you remember of having said to the sheriff, in that conversation, that you had started that rumor to fool the government? A. No, sir.

"Q. But that he was too good a friend of yours, and you did not want to fool him, and that there was nothing in it? A. The boy had been—this boy who was working for us at the time had been—interviewed by the sheriff in the northern county from which he came, up near Richville. This is the way that happened—

"Q. What happened? A. The impression Mayor Konshak may have spoken of—this boy said a sheriff there had interviewed him, and he had evaded the question of his age for the purpose of some joke. What that was, I don't know, but they were sort of neighbors and he was joking with him.

"Q. I should think it was a joke. A. I did not say so; that is what the boy said about the former interview by a sheriff. And I said, 'How old a boy?' That was this boy, John McFadden. Then I said to Mr. Konshak, I would not do that which that boy did with the other sheriff—perfectly legitimate. I said to Mr. Konshak, 'You are a friend of mine, and I would not try to fool you as the sheriff up in the other county.'

"Q. Didn't you say to him you didn't start that rumor to fool the government, but you would not fool him; you are too good a friend? A. No, sir; did not."

The government, in rebuttal, placed the sheriff upon the stand, who testified as follows:

"Q. At that time did you have a conversation with him in regard to registration? A. I had.

"Q. Did you ask him whether there was anybody on his farm, or had been anybody on his farm, that failed to register? A. I did.

"Q. And what did he say? A. He said, 'No.' Of course, he said—when I asked him that, if he had any man on his farm, or his working man, which

did not register, or if he had any under the age of registration age, that didn't register during the registration time, and he says, 'Yes, I have a couple of men working here for me; always thought they was going—something similar—I can't remember the exact words; he said something similar, if they would ask him he would say, 'No, I had men that didn't register;' and he says he didn't like to lie to me, and he says he had one which was too young and one which was too old; that is the reason he didn't register. Then I asked him if he ever had a man during that time that worked for him that did not register, and he said, 'No.' "

Upon surrebuttal, the defendant was asked concerning that conversation, which resulted as follows:

"Q. What was said at that conversation? A. Mr. Konshak—

"Mr. Jacques: Objected to, not being proper rebuttal; the witness having gone over the conversation on cross-examination, and denied he said what the witness said he said.

"The Court: I think the question was asked in direct examination whether he made certain statements, and he said he did not. Now, the sheriff was called simply to prove that he did make that particular statement. It doesn't seem to me it is proper rebuttal; what the conversation was would not be material. He has already denied making the statement specified in the question that was put to him. That is as far as it is necessary to go.

"Mr. Latimer: Exception."

We think the court made no substantial error in its ruling. The defendant had been asked on his cross-examination if he had a certain identified conversation. He not only denied having said the things to which his attention was directed, but went further and stated his understanding of what was there said. The purpose of the cross-examination was evidently solely to lay the ground for impeachment by proof that he had made the statement incorporated in the inquiry. That statement in substance was covered by the testimony of the sheriff in rebuttal. As said above, defendant not only denied this statement in the cross-examination, but he went further and gave his version of what was there said. How could he add to that situation? The jury had clearly his version and that of the sheriff. The question was objected to as not proper rebuttal, and that objection was properly sustained.

The judgment is affirmed.